**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIANNE HURLEY,<br><br>               Plaintiff,<br><br>               v.<br><br>RIVERVIEW MEDICAL CENTER *et al.*,<br>               Defendants. | Civil Action No. 21-2860 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

This matter comes before the Court upon Defendants Riverview Medical Center ("Riverview") and Hackensack Meridian Health, Inc.'s ("HMH") (collectively, "Defendants") motion for summary judgment seeking the dismissal with prejudice of Plaintiff Marianne Hurley's ("Plaintiff") Amended Complaint (ECF No. 8). (ECF No. 33.) Plaintiff opposed the motion (ECF No. 41), and Defendants replied (ECF No. 42). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Defendants' motion for summary judgment is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

The Court recites only the uncontested facts necessary to contextualize the present motion.[1]

---

[1] All other relevant or material facts in this matter are contested and will be recited where applicable in the Court's analysis below.

In June 1999, Plaintiff began working for Riverview[2] in an administrative support role within the Emergency Department ("ED"). (DSUMF ¶¶ 1; PRDSUMF ¶¶ 1, 6; Pl.'s Statement of Material and Disputed Facts ("PSMDF") ¶ 1, ECF No. 41-1; Defs.' Response to Pl.'s Statement of Material and Disputed Facts ("DRPSMDF") ¶ 1, ECF No. 42-9.) Her job responsibilities included administrative and office responsibilities assisting both the ED Director and ED Nurse Manager. (*See* PSMDF ¶ 1; DRPSMDF ¶ 1.)

At all times during her employment, Plaintiff was an at-will employee who was paid hourly. (DSUMF ¶ 7; PRDSUMF ¶ 7.) Her usual scheduled hours were Monday through Friday, 9:00 a.m. to 5:30 p.m. (DSUMF ¶ 8; PSMDF ¶ 63.) Over the years, Plaintiff had several direct supervisors. (PSMDF ¶ 3; DRPSMDF ¶ 3.) Most recently, Plaintiff was supervised by Tammy Harden ("Harden"), an ED Nurse Manager. (PSMDF ¶ 4; DRPSMDF ¶ 4.) In the Riverview management structure, Harden reported directly to Denise Swan ("Swan"), the Senior Manager of the ED. (PSMDF ¶ 5; DRPSMDF ¶ 5.) Swan in turn reported to Rebecca Graboso ("Graboso"), the Vice President of Nursing. (*Id.*)

In July 2019, Plaintiff began experiencing medical symptoms such as extreme fatigue, facial rashes, sporadic fevers, and joint pain. (PSMDF ¶ 15; DRPSMDF ¶ 15.) As these symptoms worsened, she applied for, and was granted, continuous leave under the Family and Medical Leave Act ("FMLA") through Riverview's independent third-party administrator, The Hartford ("Hartford"). (DSUMF ¶¶ 13, 14; PRDSUMF ¶¶ 13, 14; PSMDF ¶ 14; DRPSMDF ¶ 14.) In

---

[2] Riverview is a hospital within the HMH healthcare system. (Defs.' Statement of Undisputed Material Facts ("DSUMF") ¶ 2, ECF No. 33-2; Pl.'s Responses to Defs.' Statement of Undisputed Material Facts ("PRDSUMF") ¶ 2, ECF NO. 41-2.)

November 2019, Plaintiff's FMLA leave concluded, and she returned to work. (DSUMF ¶ 16; PRDSUMF ¶ 16.)[3]

In March 2020, Plaintiff missed additional time from work and was hospitalized for what doctors believed was lupus. (PSMDF ¶¶ 16-19; DRPSMDF ¶¶ 16-19.) Plaintiff did not immediately request FMLA leave. (PSMDF ¶¶ 16-22; DRPSMDF ¶¶ 16-22.) In October 2020, however, Plaintiff contacted Hartford to apply for intermittent FMLA-leave after officially being diagnosed with lupus. (PSMDF ¶¶ 21-22; DRPSMDF ¶¶ 21-22; *see also* PSMDF ¶ 18; DRPSMDF ¶ 18 (disputing details of Plaintiff's communications about her illness, but not disputing that Plaintiff was seeking treatment for lupus).) Hartford approved Plaintiff's proposed FMLA leave for the days of October 22, October 23, October 27, November 5, November 20, and December 3, 2020. (PSMDF ¶ 25; DRPSMDF ¶ 25.)

Around the time that Plaintiff requested intermittent FMLA-leave, Riverview was taking certain precautions related to the pandemic. (DSUMF ¶ 23; PRDSUMF ¶ 23; PSMDF ¶ 29; DRPSMDF ¶ 29.) Specifically, Riverview assigned all available employees, including Plaintiff, to assist with fit-testing employees for respirators and state-mandated screening procedures.[4] (DSUMF ¶ 23; PRDSUMF ¶ 23.) In response, Plaintiff expressed discomfort regarding Covid-19 exposure. (DSUMF ¶ 24; *see* PRDSUMF ¶ 24.) Plaintiff communicated her discomfort to Harden and requested to be excused from duties that might exposure her to Covid-19. (*See* PSMDF ¶ 31; DRPSMDF ¶ 31.)

---

[3] While at Riverview, Plaintiff applied for and received FMLA leave in 2001, 2003, 2013, and 2017, in addition to her FMLA leave in 2019. (DSUMF ¶ 11; PRDSUMF ¶ 11.)

[4] These screening procedures included asking hospital visitors questions and taking temperatures at the entrance of the hospital. (DSUMF ¶ 23; PRDSUMF ¶ 23.)

3

In emails dated October 20, 2020, Swan communicated with various managers as to whether Plaintiff needed to obtain an accommodation through Human Resources ("HR") in order to be excused from her job duties related to Covid-19.[5] (PSMDF ¶¶ 35-39; DRPSMDF ¶¶ 35-39.) Management concluded that if Plaintiff had "a medical reason [that prevented her from being] deployed for several hours a week, then she need[ed] to go to HR and request an accommodation." (PSMDF ¶ 36; DRPSMDF ¶ 36.) Plaintiff never contacted HR regarding an accommodation for any Covid-19-related assignments. (DSUMF ¶ 28; PRDSUMF ¶ 28.) Regardless, Plaintiff never took anyone's temperature at the door, nor did Plaintiff engage in any fit-testing. (DSUMF ¶¶ 31, 32; PRDSUMF ¶¶ 31, 32.) Plaintiff was not disciplined for failing to perform these duties. (DSUMF ¶¶ 28, 32; PRDSUMF ¶¶ 28, 32.)

Separately, in the fall of 2020, HR for Riverview conducted an investigation regarding Plaintiff's time and attendance. (*See* DSUMF ¶¶ 20, 22, 40; PRDSUMF ¶¶ 20, 22, 40.) Defendants' investigation concluded with a finding that Plaintiff was receiving pay for hours she did not work. (DSUMF ¶¶ 20, 44, 50.) Plaintiff had a duty to review her paystubs and report any payment errors under company policy, and at no time during her employment with Riverview did Plaintiff report any overpayments by Riverview for unearned compensation. (DSUMF ¶¶ 42-43; PRDSUMF ¶¶ 42-43.)

On November 23, 2020, after analyzing data pertaining to Plaintiff's hours, HR met with Plaintiff regarding allegations of improperly recorded time, known as "theft of time."[6] (*See*

---

[5] To be clear, Plaintiff's managers were considering Plaintiff's request to be medically accommodated from Covid-19-related job responsibilities while at work because of a medication she was taking, not whether Plaintiff should be required to perform Covid-19-related job responsibilities during her approved FMLA leave. (*See* PSMDF ¶¶ 32-34; DRPSMDF ¶¶ 32-34.)

[6] Officially, the infraction Plaintiff was terminated for was "[m]isappropriation, theft, unauthorized possession or misuse of property belonging to HMH or any team member, patient or HMH visitor." (DSUMF ¶ 48; PRDSUMF ¶ 48.)

DSUMF ¶¶ 20, 45, 48; PRDSUMF ¶¶ 20, 45, 48; PSMDF ¶ 91; DRPSMDF ¶ 91.) After speaking with Plaintiff, Mary Mueller ("Mueller"), the HR investigator for Plaintiff's case, issued a Level II disciplinary notice under HMH guidelines. (DSUMF ¶¶ 44, 46; PRDSUMF ¶ 46.) Thereafter, Plaintiff was suspended pending a final investigatory review, and she was instructed to gather any evidence she may have for presentation at her forthcoming disciplinary review meeting. (DSUMF ¶ 49; PRDSUMF ¶ 49.) Plaintiff did not submit any evidence that she was in fact working during the times in question or that she properly reported her absences. (DSUMF ¶ 50; PRDSUMF ¶ 50.) Furthermore, at her disciplinary review meeting, Plaintiff offered no witnesses and no documentary evidence to contradict HR's investigative findings that Plaintiff engaged in theft of time. (DSUMF ¶ 51; PRDSUMF ¶ 51.)

On November 30, 2020, following her disciplinary review hearing, Plaintiff's suspension was upheld, and she was terminated for gross misconduct. (DSUMF ¶ 52; PRDSUMF ¶ 52.) On December 3, 2020, Plaintiff was mailed a formal termination notice. (PSMDF ¶ 98; DRPSMDF ¶ 98.) Plaintiff never appealed her termination pursuant to HMH's internal dispute resolution policy. (DSUMF ¶¶ 56, 58; PRDSUMF ¶¶ 56, 58; Mueller Certification ¶ 16, ECF No. 33-42.)

### B.    Procedural Background

On February 18, 2021, Plaintiff filed her original Complaint in this Court. (Compl., ECF No. 1.) On May 5, 2021, Plaintiff filed an Amended Complaint, which is the operative Complaint in this matter. (Am. Compl., ECF No. 8.) Plaintiff's Amended Complaint brings three groups of claims against Defendants: 1) Violations of the FMLA; 2) Violations of the New Jersey Law against Discrimination (the "NJLAD"); and 3) Violations of the Americans with Disabilities Act (the "ADA"). (Am. Compl. ¶¶ 65-80.) These three groups are comprised of ten distinct counts: (1) FMLA-interference; (2) FMLA-retaliation; (3) disability discrimination under the ADA;

(4) disability discrimination under the NJLAD; (5) retaliation under the ADA; (6) retaliation under the NJLAD; (7) failure to accommodate under the ADA; (8) failure to accommodate under the NJLAD; (9) hostile work environment under the ADA; and (10) hostile work environment under the NJLAD. (*Id.*) Defendants move for summary judgment on all counts. (Defs.' Moving Br. 1, ECF No. 33-1.)

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations

in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III.   DISCUSSION

While Plaintiff brings ten distinct counts under the FMLA, ADA, and NJLAD, this Court's analysis of many of these claims overlaps. Specifically, the Court's analysis of Plaintiff's retaliation and discrimination claims, all of which are subject to the *McDonnell-Douglas* burden shifting framework, rely on similar factual arguments by the parties. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 n.36 (3d Cir. 2022) (stating that the *McDonnell-Douglas* framework applies to ADA and FMLA retaliation claims); *Grande v. Saint Clare's Health Sys.*, 164 A.3d 1030, 1042 (N.J. 2017) (applying *McDonnell-Douglas* framework to NJLAD discrimination claims); *Holmes-Mergucz v. Cellco P'ship*, No. 18-11816, 2021 WL 3163985, at *4 (D.N.J. July

27, 2021) (finding that the *McDonnell-Douglas* framework applies to ADA discrimination and NJLAD discrimination claims (collecting cases)). For conceptual ease, therefore, the Court will first conduct one full analysis of Plaintiff's FMLA-retaliation claim under the *McDonnell-Douglas* framework, and then the Court will rely on the same *McDonnell-Douglas* analysis to resolve Plaintiff's other retaliation or discrimination claims.

Accordingly, the Court considers four subsets of Plaintiff's claims: (1) Plaintiff's FMLA claims (both interference and retaliation); (2) Plaintiff's remaining retaliation claims; (3) Plaintiff's failure to accommodate claims; and (4) Plaintiff's hostile work environment claims. The Court will analyze each subset of claims in turn.

### A.    Plaintiff's FMLA Claims

Plaintiff brings two theories of FMLA-violation against Defendants: interference and retaliation. (Am. Compl. ¶¶ 65-70.) "An employer may be sued under the FMLA for interfering with an employee's FMLA rights, as well as for retaliating against an employee who exercises rights under the FMLA." *Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 121 (D.N.J. 2020) (quoting *Caruso v. Bally's Atl. City*, No. 16-5021, 2019 WL 4727912, at *5 (D.N.J. Sept. 27, 2019)); *see also Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (outlining the FMLA's interference and retaliation provisions). "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009). For the reasons outlined below, the Court grants Defendants' motion for summary judgment as to both Plaintiff's FMLA-interference and FMLA-retaliation claims.

i.      *FMLA Interference*

The FMLA "prohibits an employer from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right' that it guarantees." *Marsh*, 455 F. Supp. 3d at 121 (alterations in original). To prevail on an interference claim, a plaintiff must show that: "(1) [she] was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of [her] intention to take FMLA leave; and (5) the plaintiff was denied benefits to which [she] was entitled under the FMLA." *Chance v. St. Michael's Med. Ctr.*, No. 22-4526, 2023 WL 157585, at *2 (D.N.J. Jan. 11, 2023) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014)). Importantly, "[t]he FMLA . . . does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012) (internal quotation marks and citation omitted). As such, where a defendant can show that a plaintiff was terminated for a reason other than interference with the plaintiff's FMLA rights, the plaintiff's interference claim fails. *Id.* (collecting cases).[7]

Defendants in moving for summary judgment on Plaintiff's interference claim argue that Plaintiff failed to establish that her termination was related to her exercise of FMLA rights. (Defs.' Moving Br. 12, ECF No. 33-1.) Instead, Defendants argue, Plaintiff was terminated for reasons wholly unrelated to Plaintiff's medical leave. (*Id.* at 12-13.) Specifically, Defendants argue that the record establishes as undisputed fact that:

---

[7] Unlike with an FMLA-retaliation claim, an FMLA-interference claim is not about discrimination, and as such, the *McDonnell-Douglas* burden shifting framework does not apply to a Court's FMLA-interference analysis. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

> [1] [t]he demands of Covid[-19] triggered a [review by Defendants']
> Finance Department ('Finance'). . .; which identified concerns
> regarding Plaintiff's productivity and hours . . .; [2] [a]n
> investigation was undertaken by HR in response . . .; [3] [t]he
> investigation included review of Plaintiff's time records, as well as
> building and garage swipes and an interview with Plaintiff . . .;
> [4] Plaintiff provided no evidence that she was in fact working
> during the times in question or that she had properly reported her
> absences . . .; [5] [t]he investigator concluded that Plaintiff often was
> not even on the premises during her assigned work hours, and
> collected pay for hours that she did not work in violation of
> [company] policy . . .; [6] Riverview consistently terminates
> employees who are found to have engaged in theft of time . . .; and
> [7] [c]onsistent with policy and practice, a decision was made to
> terminate Plaintiff for [her] misconduct.

(*Id.* (citing Feher Certification, Ex. 12, ECF No. 33-15; Feher Certification, Ex. 6, Harden Dep. 134:6-135:9, 159:7-160:8, ECF No. 33-9; Feher Certification, Ex. 7, Mueller Dep. 192:22-193:7, 197:22-199:21, ECF No. 33-10; Feher Certification, Ex. 13, ECF No. 33-16; Feher Certification, Ex. 14, ECF No. 33-17; Feher Certification, Ex. 15, ECF No. 33-18; Feher Certification, Ex. 18, ECF No. 33-21; Feher Certification, Ex. 19, ECF No. 33-22).)

In opposition, Plaintiff appears to argue that the temporal proximity between Plaintiff's termination and her requested FMLA leave creates a genuine dispute of material fact that a jury must decide. (Pl.'s Opp'n Br. 35, ECF No. 41.) Specifically, Plaintiff maintains that a jury may conclude "that the fact that [Plaintiff] *just* took a block of FMLA [leave] in 2019 (for 12 weeks) was cause for concern when she sought to go out again in 2020." (*Id.* (emphasis in original).) In making this argument, Plaintiff cites only one exhibit, which is Hartford's approval of her FMLA-leave request in October 2020. (*Id.* at 36.) Plaintiff cites no evidence suggesting Defendants were concerned with Plaintiff taking FMLA leave in 2019 or 2020. Indeed, Plaintiff's FMLA-leave request was granted. (Feher Certification, Ex. 20, ECF No. 33-23.) Nor does Plaintiff

10

identify any evidence to suggest that Plaintiff's termination was the result of Defendants' desire to prevent her from continuing to take FMLA leave.

Ultimately, the metaphysical doubt that Plaintiff seeks to introduce to establish a genuine dispute of material fact, i.e. that temporal proximity alone suggests Plaintiff was terminated due to her FMLA-leave request, falls against Defendants' overwhelming evidence that Plaintiff was fired due to an investigative finding of "theft of time" and for a failure to report that she was being overpaid. (Feher Certification, Ex. 12; Feher Certification, Ex. 6, Harden Dep. 134:6-135:9, 159:7-160:8; Feher Certification, Ex. 7, Mueller Dep. 192:22-193:7, 197:22-199:21; Feher Certification, Ex. 13; Feher Certification, Ex. 14; Feher Certification, Ex. 15; Feher Certification, Ex. 18; Feher Certification, Ex. 19; *see also Matsushita*, 475 U.S. at 586 (finding that on summary judgment, once the moving party has met its evidentiary burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts").) As such, Plaintiff failed to establish that a genuine dispute of material fact remains as to her FMLA-interference claim. Accordingly, Defendants' motion for summary judgment on Plaintiff's FMLA-interference claim is granted.

### ii.    FMLA Retaliation

To prevail on an FMLA-retaliation claim, an employee must show that: "(1) [she] invoked [her] right to FMLA-qualifying leave[;] (2) [she] suffered an adverse employment decision[;] and (3) the adverse action was causally related to [her] invocation of rights." *Chance*, 2023 WL 157585, at *3 (internal quotation marks and citation omitted). "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein*, 691 F.3d at 302. Accordingly, as aforementioned, the Court applies the *McDonnell-Douglas* burden shifting framework to assess

Plaintiff's FMLA-retaliation claim. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Canada*, 49 F.4th at 346 n.36 (confirming that *Lichtenstein* established that the *McDonnell-Douglas* framework is utilized to evaluate FMLA-retaliation claims in the Third Circuit).

Under the *McDonnell-Douglas* framework, a plaintiff has the initial burden of establishing a prima facie case of retaliation. *Lichtenstein*, 691 F.3d at 302. "To do so, she must point to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of her retaliation claim: (a) invocation of an FMLA right[;] (b) termination[;] and (c) causation." *Id.* (citations omitted). If the plaintiff can do so, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its decision to terminate the plaintiff. *Id.* (internal quotation marks omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802)). If the defendant then meets its burden, plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [the defendant's] articulated legitimate reasons" *Id.* (internal quotation marks omitted) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). In other words, and critically, the plaintiff must "show by a preponderance of the evidence that the employer's explanation [for terminating the plaintiff] is pretextual." *Fuentes*, 32 F.3d at 764.

### a. The First *McDonnell-Douglas* Shift: Plaintiff's prima facie case of FMLA-retaliation

Defendants first contend that Plaintiff fails to establish a prima facie case of retaliation at the first shift of the *McDonnell-Douglas* analysis. (Defs.' Moving Br. 16.) Specifically, Defendants argue that "[n]o reasonable fact-finder could find a causal connection between Plaintiff's request for FMLA leave and her termination." (*Id.*) In response, Plaintiff argues that temporal proximity creates "factual issues for a jury." (Pl.'s Opp'n Br. 33-34 ("The timing between [Plaintiff's] FMLA

application in October of 2020 and her separation in November of 2020 creates factual issues for a jury.").) Plaintiff also argues that the record contains evidence that Defendants harbored antagonism towards Plaintiff, which creates a genuine dispute of material fact as to whether the cause of Plaintiff's termination was her request for FMLA leave. *Id.* at 34 (pointing to evidence in the record that Swan criticized Plaintiff about her whereabouts and arguing that such criticisms evidence "significant antagonism" toward Plaintiff and her taking FMLA leave).

"To demonstrate a causal connection [at the prima facie stage of the *McDonnell-Douglas* framework, a] plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "Evidence of temporal proximity alone is sufficient to establish causation only '[i]n certain narrow circumstances.'" *Howard v. County of Monmouth*, No. 16-6624, 2019 WL 2710791, at *9 (D.N.J. June 28, 2019) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007)). Examples of where courts in the Third Circuit found temporal proximity sufficient to establish causation include where a defendant:

> [1] decid[ed] to replace the plaintiff during the plaintiff's FMLA leave and inform[ed] the plaintiff that she had been replaced two days after her FMLA leave ended; [2] terminat[ed] the plaintiff less than a week after the plaintiff invoked her right to FMLA leave; [3] terminat[ed] the plaintiff several days after the plaintiff took FMLA leave; and [4] terminat[ed] the plaintiff three months after requesting FMLA leave and the day she was scheduled to return to work.

*Id.* (internal citations omitted).

For purposes of the Court's analysis, the Court assumes, without a deeper analysis, that Plaintiff can establish an "unusually suggestive temporal proximity" between her termination and

her FMLA-leave request because the investigation into Plaintiff's time reporting commenced only eleven days after Plaintiff testified that she informed Harden she was going to request FMLA leave. (Pl.'s Opp'n Br., Ex. B 63:11-20, 263:4-22, ECF No. 41-5.) As such, the Court moves to the second shift.

> b. **The Second *McDonnell-Douglas* Shift: Defendants' legitimate, nondiscriminatory reason for Plaintiff's termination**

Defendants set forth a clear narrative as to a legitimate, nondiscriminatory reason they terminated Plaintiff. Defendants provide evidence to suggest that in September 2020, Riverview sought to control productivity, expenses, and labor distribution as Riverview struggled under the demands of Covid-19. (Feher Certification, Ex. 6, Harden Dep. 134:7-135:9, 211:9-212:2; *see* Feher Certification, Ex. 25, ECF No. 33-28.) As a result, Defendants maintain, Finance conducted an internal review of employee payroll to see if Defendants could cut costs. (*See id.*) That internal review, memorialized in an October 19, 2020 e-mail correspondence to Harden and others, identified discrepancies in Plaintiff's pay. (Feher Certification, Ex. 12.) Defendants then provide evidence that Finance asked Harden and HR to look into whether Plaintiff was improperly reporting her hours because management could not explain the discrepancies Finance identified. (*See* Feher Certification, Ex. 6, Harden Dep. 159:7-18; Feher Certification, Ex. 12.)

Defendants provide evidence that their investigation revealed that Plaintiff was overreporting her hours and collecting pay for hours she did not work. (Feher Certification, Ex. 14; *see also* Feher Certification, Ex. 7, Mueller Dep. 192:22-195:22; Feher Certification, Ex. 13; Feher Certification, Ex. 15.) Some of these identified infractions occurred in January and June 2020, untethered from any FMLA-leave request. (Feher Certification, Ex. 14; Feher Certification, Ex. 15.) Importantly, Defendants note, to the extent Plaintiff argues that Plaintiff could not collect

wages for hours she did not work because Harden, not Plaintiff, inputted Plaintiff's hours into the payroll system each week, Riverview company policy mandates that Plaintiff review her paystubs and report any payment errors to management. (Defs.' Moving Br. 22 n.5; DSUMF ¶¶ 42-43; PRDSUMF ¶¶ 42-43; Feher Certification, Ex. 14; Feher Certification, Ex. 16 (noting "[i]f a team member believes there is a discrepancy [with her pay], he or she must immediately report the discrepancy to their leader so the appropriate corrections can be made.) Plaintiff admits she never did so. (DSUMF ¶¶ 42-43; PRDSUMF ¶¶ 42-43.)

Based on HR's findings that Plaintiff was collecting wages for hours she did not work, in November 2020, HR issued a Level II disciplinary notice, which, under company policy, can justify termination. (Feher Certification, Ex. 14; Feher Certification, Ex. 17.) Plaintiff was suspended pending a final investigatory review, and Plaintiff was instructed to gather evidence to rebut Defendants' findings at the meeting. (Feher Certification, Ex. 14.) In response, Plaintiff offered no witnesses in her defense nor any documentary evidence to contradict Defendants' investigative findings. (Feher Certification, Ex. 7, 176:22-178:13, 194:15-196:10 (providing Mueller's testimony that Plaintiff stated she had post-it notes to prove that she told Harden she would be absent on certain days or times, but that Plaintiff never produced such notes); *see also* Defs.' Moving Br. 22 n.5 (noting that "Plaintiff . . . did not produce a single [piece] of evidence that her time discrepancies were reported to" Harden as she alleged in her Amended Complaint and further noting that Plaintiff produced "no emails, no texts, no other records, and no witnesses . . . at her disciplinary review meeting"); Pl.'s Opp'n Br., Ex. BB, ECF No. 41-31 (providing a solitary text message from June 2020 that Plaintiff texted Harden she may be late because she was sick.) As such, Plaintiff was terminated for gross misconduct. (Feher Certification, Ex. 18.) Plaintiff did not appeal her termination. (Mueller Certification ¶ 16.)

In sum, Defendants provide a consistent narrative, with supporting evidence, that Plaintiff was terminated for theft of time and failing to report overpayment. As such, under the *McDonnell-Douglas* framework, the burden shifts back to Plaintiff to "show by a preponderance of the evidence that the employer's explanation [for terminating the plaintiff] is pretextual." *Fuentes*, 32 F.3d at 764.

### c.   The Third *McDonnell-Douglas* Shift: Plaintiff's rebuttal of Defendants' legitimate reasons for terminating Plaintiff

Plaintiff fails to provide evidence upon which a factfinder could reasonably conclude that Defendants' stated legitimate reason for terminating Plaintiff was pretextual. A plaintiff can show that a defendant's stated reason for termination is a pretext for FMLA discrimination in either of two ways: "(1) [s]he can discredit defendant's proffered reason; or (2) [s]he can offer evidence that discrimination more likely than not was a motivating or determinative factor in the adverse action." *Kancherla v. Lincoln Tech. Inst., Inc.*, No. 14-7784, 2018 WL 922126, at *13 (D.N.J. Feb. 15, 2018) (citing *Fuentes*, 32 F.3d at 764). Here, Plaintiff seeks to discredit Defendants' proffered reason for her termination, theft of time and violation of company policy. (*See* Pl.'s Moving Br. 13-14.)

"To discredit the employer's proffered reason . . . [a] plaintiff cannot simply show that the employer's decision was wrong or even mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Instead, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendants'] proffered legitimate reasons for [their] action that a reasonable factfinder could rationally find them unworthy of credence, and . . . infer that [Defendants] did not act for the asserted non-

discriminatory reasons." *Griffith v. PNC Bank*, No. 13-5407, 2015 WL 2400222, at *7 (D.N.J. May 20, 2015) (internal quotation marks and citation omitted); *see also Canada*, 49 F.4th at 347. This standard places a difficult burden on the plaintiff in arguing for pretext. *Fuentes*, 32 F.3d at 765.

The Court's obligation at this shift in the *McDonnell-Douglas* framework is to "consider a broad array of evidence, including antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Canada*, 49 F.4th at 347 (internal quotation marks and citations omitted). In doing so, courts must look to "the totality of the circumstances to determine whether an employer's proffered nondiscriminatory reason is pretext for a discriminatory motive." *Id.*

Upon review of the record[8] and consideration of the parties' arguments, the Court concludes that Plaintiff failed to carry her burden to rebut, by a preponderance of the evidence, Defendants' stated legitimate reasons for terminating Plaintiff. First, while Plaintiff provides some testimonial evidence to suggest that Harden or other team members employed by Defendants expressed antagonism towards Plaintiff, none of Plaintiff's proffered evidence reasonably suggests

---

[8] The limited substantive briefing Plaintiff offers in her Opposition brief as to pretext in the context of FMLA-retaliation is sufficient only to establish a prima facie case of pretext. (*See* Pl.'s Opp'n Br. 33-34; *see also Budhun*, 765 F.3d at 258.) As such, the Court relies on Plaintiff's "Evidence of Pretext" section in her Opposition brief in evaluating the third shift under the *McDonnell-Douglas* framework because it is the only place in Plaintiff's briefing where Plaintiff argues expressly under the third shift of the framework. (Pl.'s Opp'n Br. 13-18 (correctly noting that in "the third and final stage [of the *McDonnell-Douglas* framework the burden of production shifts back to the employee . . . to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for" Plaintiff's termination).)

that such antagonism was the result of Plaintiff requesting FMLA leave. (Pl.'s Opp'n Br., Ex. Z, ECF No. 41-29.)[9]

Second, as documented above, Defendants set forth a clear and consistent narrative for terminating Plaintiff: theft of time and failure to report being paid for hours she did not work, in violation of company policy. Significantly, Plaintiff does not point to any inconsistencies in Defendants' narrative, and the Court cannot independently discern any inconsistencies in Defendants' asserted reasons for firing Plaintiff that might suggest pretext.

Finally, the Court considers any other evidence that Plaintiff can provide suggesting Defendants harbored retaliatory animus against her for exercising her FMLA rights. *Canada*, 49 F.4th at 347 (noting as a catchall that courts are to consider "any other evidence suggesting that the employer had a retaliatory animus when taking [an] adverse action" like terminating the plaintiff). To this end, Plaintiff makes two arguments: (1) that Defendants lack evidence regarding the falsification of Plaintiff's hours, suggesting Plaintiff's termination was pretextual; and (2) that the temporal proximity between Plaintiff's FMLA leave and termination suggests Defendants' stated reason for terminating Plaintiff is pretextual. (*See* Pl.'s Moving Br. 14-18.) Simply put, a juror could not reasonably conclude that either of these arguments establishes that Defendants harbored retaliatory animus for Plaintiff because she sought FMLA leave.

---

[9] Plaintiff cites to one exhibit in the record, Exhibit Z, as evidence of "significant animosity" by Defendants towards Plaintiff's intermittent FMLA-leave. Exhibit Z, however, is Plaintiff's handwritten notes indicating Plaintiff's own belief that Swan was upset with her for not providing a written request for accommodations from her Covid-19 job responsibilities. (*See* Pl.'s Opp'n Br., Ex. Z.) Such evidence does not speak to whether Swan or anyone in Riverview management harbored animosity for Plaintiff because she took FMLA leave or that she made a request to take FMLA leave. Furthermore, to the extent that such testimonial evidence suggests animosity towards Plaintiff for seeking medical accommodations from her Covid-19 related work responsibilities, such limited evidence of animosity is not sufficient to overcome Defendants' substantiated legitimate reason for terminating Plaintiff at the third shift of the *McDonnell-Douglas* framework.

First, Plaintiff argues that Defendants offer no evidence that Plaintiff falsified her time records, and as such, Defendants' stated reason for terminating Plaintiff is clearly pretextual. The record suggests otherwise. As noted, there is substantial evidence in the record that could lead Defendants to conclude that Plaintiff was either falsifying her hours or that she failed to report that she was being overpaid. (Feher Certification, Mueller Dep. 192:22-193:7; Feher Certification, Ex. 12; Feher Certification, Ex. 14 (containing an email, and accompanying documentation evidencing, that in a sampling of four random weeks in January, June, and October 2020, Plaintiff collected "wages for 86.2 hours that she was not physically present in the building . . . and did not work, equating to approximately $2[,]317").) In fact, the evidence in the record, if anything, suggests it is Plaintiff, not Defendants, who is unable to offer any evidence regarding the allegations that she falsified her time. (Feher Certification, Ex. 7, 176:22-178:13, 194:15-196:10.) In any event, even if Defendants were ultimately incorrect that Plaintiff falsified her hours or failed to report her overpayments, "[t]o discredit the employer's proffered reason . . . [a] plaintiff cannot simply show that the employer's decision was wrong or even mistaken." *Fuentes*, 32 F.3d at 765. For these reasons, Plaintiff's contention that Defendants can offer no evidence that Plaintiff falsified her time records is contradicted by the record and does not demonstrate any discriminatory animus or pretext.

Second, Plaintiff contends that she was only terminated after she applied for intermittent FMLA-leave and after the entire executive management team knew about Plaintiff's FMLA-leave request. (Pl.'s Opp'n Br. 14, 17.) As such, Plaintiff appears to argue that the temporal proximity between her termination and her FMLA-leave request shows that Defendants' justifications for Plaintiff's termination are pretextual and motivated by retaliatory animus. Importantly, however, temporal proximity alone cannot establish pretext in this Circuit. *Houston v. Dialysis Clinic, Inc.*,

No. 13-4461, 2015 WL 3935104, at *1, 11 (D.N.J. June 26, 2015) (finding that a plaintiff "cannot rely solely on temporal proximity to show pretext at the summary judgment stage); *see also Menekse v. Harrah's Chester Casino & Racetrack*, 649 F. App'x 142, 146 (3d Cir. 2016) (finding that allegations of temporal proximity where a plaintiff was terminated one week after an FMLA request were not, alone, sufficient to establish pretext). Therefore, even if Plaintiff makes a showing of temporal proximity, Plaintiff cannot show pretext by a preponderance of the evidence where Plaintiff has offered no other evidence suggesting retaliatory animus by Defendants.

Accordingly, for the reasons outlined above under the *McDonnell-Douglas* burden shifting framework, Plaintiff failed to show by a preponderance of the evidence that Defendants' stated, legitimate reason for terminating Plaintiff was pretextual. Accordingly, Defendants' motion for summary judgment on Plaintiff's FMLA-retaliation claim is granted.

### B.       Remaining Retaliation and Discrimination Claims

Defendants' motion for summary judgment on Plaintiff's remaining retaliation and discrimination claims under the ADA and NJLAD boils down to whether Plaintiff can show, by a preponderance of the evidence, that Plaintiff's lupus disability or request for medical accommodations led to her termination. To be clear, even if this Court assumes that Plaintiff can set forth prima facie cases for ADA disability discrimination, NJLAD disability discrimination, ADA accommodation retaliation, and NJLAD accommodation retaliation, Defendants proffer the same legitimate reason for terminating Plaintiff in response: theft of time and failure to report overpayment. That leaves the Court at the third shift in the *McDonnell-Douglas* framework for each remaining retaliation and discrimination claim where Plaintiff must show pretext.

Importantly, at the third shift in the *McDonnell-Douglas* framework, Plaintiff in her briefing provides only one grouping of facts suggestive of pretext for all of her theories of

20

retaliation and discrimination. (Pl.'s Opp'n Br. 13-18.) As such, for the same reasons Plaintiff's

pretext arguments failed for her FMLA-retaliation claim, so too do her arguments for pretext fail

for her other retaliation and discrimination claims to the extent that they are identical. (Pl.'s Opp'n

Br. 31 (confirming that all of Plaintiff's pretext arguments, for all relevant claims, are set forth in

her "pretext section" where Plaintiff says she "will not repeat her arguments surrounding pretext.

. . set forth in the pretext section"); *see also Foster v. Kennedy Univ. Hosp., Inc.*, No. 4415, 2022

WL 2981156, at *9 (D.N.J. July 28, 2022) (providing an example where this Court referred to its

FMLA-retaliation analysis as instructive for its NJLAD retaliation analyses because the two tests

essentially seek to ascertain the same thing, i.e., whether a plaintiff engaged in a protected activity,

suffered an adverse action, and a causal connection exists between the protected activity and

adverse action).)

Accordingly, the Court will only briefly assess Plaintiff's remaining retaliation or

discrimination claims to highlight that the Court's reasoning above is equally applicable to each

claim.

i.     *ADA and NJLAD Disability Discrimination*[10] *Claims*

"To meet the prima facie burden in a discriminatory discharge claim brought pursuant to

the ADA, a plaintiff must show[:] (1) [s]he has a disability or is perceived by the employer as

disabled; (2) that [s]he was qualified for the position from which [s]he was discharged; and

---

[10] Plaintiff labels this Count as "Actual/Perceived/Record of Disability Discrimination." (Am.
Compl. ¶¶ 76-80.) In her briefing, Plaintiff refers to this claim as a "claim for disability
discrimination." (Pl.'s Opp'n Br. 8.) A claim for disability discrimination, where a plaintiff alleges
that discrimination occurred where the plaintiff was terminated for a disability, is sometimes
referred to as a discriminatory discharge claim. *See, e.g., Hoskins v. Valcor Eng'g*, No. 14-6536,
2017 WL 1023353, at *5 (D.N.J. Mar. 16, 2017) (referring to a disability discrimination claim as
a disability discharge claim in the context of a plaintiff's termination for a disability). Accordingly,
the Court will refer to this claim as both a disability discrimination and disability discharge claim
interchangeably.

(3) [s]he has suffered an adverse employment action because of that disability." *Hoskins*, 2017 WL 1023353, at *5 (quoting *Cinelli v. U.S. Energy Partners*, 77 F. Supp. 2d 566, 573 (D.N.J. 1999) (internal quotation marks omitted)). The requirements under the NJLAD are identical, except that the NJLAD requires an additional fourth element, specifically, that the employer sought someone else to perform the same work as the plaintiff once the plaintiff was discharged. *Hoskins*, 2017 WL 1023353, at *5; *see also Joseph v. N.J. Transit Rail Operations Inc.*, 586 F. App'x 890, 892 (3d Cir. 2014).

The *McDonnell-Douglas* framework applies to disability discrimination claims under the ADA and NJLAD. *Mascarenhas v. Rutgers, State Uni.*, 412 F. Supp. 3d 500, 507 (D.N.J. 2019) (citing *Walton v. Mental Health Ass'n of S.E. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999)); *see also Canada*, 49 F.4th at 346 n.36 (confirming that the *McDonnell-Douglas* framework is utilized to evaluate ADA-retaliation claims); *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 393, 403 (3d Cir. 2007) (confirming that the *McDonnell-Douglas* framework is utilized to evaluate NJLAD discrimination claims). As such, Plaintiff must establish by a preponderance of the evidence that Plaintiff was terminated because she was disabled. Plaintiff cannot do so where she relies on the same evidence of pretext when arguing retaliation under the FMLA to show she was fired based on a disability (*See* Pl.'s Opp'n Br. 13-18.) As such, Defendants' motion for summary judgment as to Plaintiff's ADA and NJLAD disability claims is granted.

ii.   *NJLAD and ADA Medical Accommodation Retaliation*

"The elements of a prima facie NJLAD retaliation claim are the same as [those] for a retaliation claim under the FMLA – a '[p]laintiff must demonstrate by a preponderance of the evidence that[:] (1) she engaged in protected activity—here, a request for a reasonable accommodation; (2) she suffered an adverse action; and (3) a causal connection exists between the

protected activity and the adverse action.'" *Foster*, 2022 WL 2981156, at *9 (quoting *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 239 (D.N.J. 2015)). The same can be said of Plaintiff's ADA claim. "To establish a prima facie case of retaliation under the ADA, [a plaintiff is required] to show: '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Stouch v. Township of Irvington*, 354 F. App'x 660, 667 (3d Cir. 2009) (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004)). Both claims are subject to the *McDonnell-Douglas* framework. *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 94 (3d Cir. 2020) (providing that ADA retaliation claims are subject to the *McDonnell-Douglas* framework); *Holmes-Mergucz*, 2021 WL 3163985, at *4 (providing that the *McDonnell-Douglas* framework applies to NJLAD retaliation claims). As such, this Court's third-shift analysis under FMLA-retaliation is equally applicable here, except that the Court must evaluate whether a reasonable juror could conclude, by a preponderance of the evidence, that a causal connection exists between Plaintiff's request for medical accommodation and her termination.

As relevant for Plaintiff's medical-accommodation-retaliation claims, the Court notes that while Defendants may have insisted Plaintiff get a written medical accommodation to excuse her from Covid-19 related job responsibilities, Plaintiff functionally received a medical accommodation from her Covid-19 job responsibilities where she was not required to perform such duties. (DSUMF ¶¶ 31, 32; PRDSUMF ¶¶ 31, 32.) Moreover, Plaintiff admits she was not punished for seeking medical accommodations. (DSUMF ¶¶ 28, 32; PRDSUMF ¶¶ 31, 32.) As such, Plaintiff fails to provide evidence capable of allowing a reasonable juror to conclude by a preponderance of the evidence that Defendants terminated Plaintiff for requesting medical

accommodations. Accordingly, Defendants' motion for summary judgment as to Plaintiff's ADA and NJLAD retaliation claims is granted.

### C.    Remaining Violations of the NJLAD and ADA

Finally, Plaintiff alleges two additional theories of violation under the ADA and NJLAD: 1) failure to accommodate; and 2) hostile work environment. (Am. Compl. ¶¶ 71-80.) Defendants move for summary judgment on both Counts. (Defs.' Moving Br. 26-29, 35-37, 40.)

#### i.    Failure to Accommodate

Unlike the ADA, the NJLAD "does not specifically address failure to accommodate." *Caraballo v. City of Jersey City Police Dep't*, 204 A.3d 254, 261 (N.J. 2019) (citation omitted). New Jersey courts, however, "have uniformly held that the [NJLAD] nevertheless requires an employer to reasonably accommodate an employee's handicap." *Id.* (citations omitted) Therefore, this Court must "evaluate[] an employer's obligation to reasonably accommodate an employee's disability under the [NJ]LAD in accordance with the ADA." *Id.* (quoting *Grande*, 164 A.3d at 1041); *see also Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 n.12 (3d Cir. 2006) (citations omitted) ("The requirements for failure to accommodate claims under [the NJLAD] have been interpreted in accordance with the [ADA].").

To succeed in proving a failure-to-accommodate claim, a plaintiff must demonstrate that she:

> (1) qualifies as an individual with a disability, or . . . is perceived as
> having a disability, as that has been defined by statute; (2) is
> qualified to perform the essential functions of the job, or was
> performing those essential functions, either with or without
> reasonable accommodations; and (3) that [the employer] failed to
> reasonably accommodate [her] disabilities.

*Caraballo*, 204 A.3d at 261 (internal quotation marks and citation omitted). A reasonable accommodation refers to "the duty of an employer to attempt to accommodate the physical

disability of the employee, not the duty on the part of the employer to acquiesce to the disabled employee's requests for certain benefits or remuneration." *Id.* (quoting *Raspa v. Sheriff of Gloucester*, 924 A.2d 435, 444 (N.J. 2007)). When requesting accommodations, "the employee must make a reasonable . . . request." *Rosenfeld v. Canon Bus. Sols., Inc.*, No. 09-4127, 2011 WL 4527959, at *14 (D.N.J. Sept. 26, 2011). "Requests for reasonable accommodation may be oral or written and do not have to be made explicitly." *Id.* (citing *Boyce v. Lucent Techs.*, No. L-5047-01, 2007 WL 1774267, at *5 (N.J. Super. Ct. App. Div. June 21, 2007)). Once a reasonable request is made, "the employer is obliged to engage in an interactive process to attempt to fashion an appropriate reasonable accommodation." *Id.*

Defendants argue that no genuine dispute of material fact remains as to whether Defendants failed to reasonably accommodate Plaintiff's disability, lupus. (Defs.' Moving Br. 29.) Defendants' argument is threefold. First, Defendants argue that Plaintiff never requested an accommodation for her lupus. (*Id.* at 29-30.) Second, Defendants argue that Plaintiff failed to engage in the interactive process where she never requested an accommodation or provided requested medical documentation demonstrating a need for workplace restrictions. (*Id.* at 32.) And third, Defendants argue, notwithstanding Plaintiff's failure to request an accommodation, Defendants accommodated Plaintiff's lupus by assigning her to data entry despite her job requiring her to conduct Covid-19 screening. (*Id.* at 34.) The Court agrees with Defendants that the undisputed evidence in the record compels the conclusion that Plaintiff cannot prove her failure-to-accommodate claim because no evidence exists in the record to suggest that Defendants failed to reasonably accommodate Plaintiff's lupus.

The undisputed facts in this case show that in the Fall of 2020, Riverview assigned all available employees, including Plaintiff, to assist with fit-testing employees for respirators and

state-mandated screening procedures. (DSUMF ¶ 23; PRDSUMF ¶ 23.) In response, Plaintiff expressed discomfort regarding Covid-19 exposure. (DSUMF ¶ 24; *see* PRDSUMF ¶ 24.) Plaintiff communicated her discomfort to Harden and requested to be excused from duties that might expose her to Covid-19. (*See* PSMDF ¶ 31; DRPSMDF ¶ 31.) In emails dated October 20, 2020, Swan communicated with various managers as to whether Plaintiff needed to obtain an accommodation through HR in order to decline her job duties related to Covid-19. (PSMDF ¶¶ 35-39; DRPSMDF ¶¶ 35-39.) Management concluded that if Plaintiff had "a medical reason [that prevented her from being] deployed for several hours a week, then she need[ed] to go to HR and request an accommodation." (PSMDF ¶ 36; DRPSMDF ¶ 36.) Plaintiff never contacted HR regarding any accommodation for any Covid-19-related assignments. (DSUMF ¶ 28; PRDSUMF ¶ 28.)

Critically, however, after Plaintiff expressed discomfort about working with patients during Covid-19, Plaintiff never took anyone's temperature at the door, nor did Plaintiff engage in any fit-testing. (DSUMF ¶¶ 31, 32; PRDSUMF ¶¶ 31, 32.) Moreover, and significantly, Plaintiff admits she was not disciplined for these failures to perform her job responsibilities. (DSUMF ¶¶ 28, 32; PRDSUMF ¶¶ 28, 32.) As such, the Court finds that the evidence conclusively establishes that Plaintiff received the accommodation she sought, to be excused from Covid-19-related job responsibilities. Therefore, no genuine dispute of material fact remains as to whether Defendant reasonably accommodated Plaintiff's disability. Accordingly, Defendants' motion for summary judgment on Plaintiff's failure to accommodate claims under the NJLAD and ADA is granted.

ii.      *Hostile Work Environment*[11]

To succeed on a hostile work environment claim under the NJLAD or ADA,

> [A] plaintiff must show that the complained of conduct . . . (1) would
> not have occurred but for the employee's protected status and was
> (2) severe or pervasive enough to make a (3) reasonable person
> believe that (4) the conditions of employment have been altered and
> the working environment is hostile or abusive.

*Carroll*, 2020 WL 4218409, at *7 (quoting *Shepherd v. Hunterdone Dev. Ctr.*, 803 A.2d 611, 625 (N.J. 2002)). "Offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment [claim]." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (internal quotation marks omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Rather, conduct must be extreme to amount to a change in the terms and conditions of employment. *Id.* Assessing extreme workplace environments requires courts to conduct a totality of the circumstances analysis and to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff argues that Defendants fostered a hostile work environment where management mocked Covid-19's severity in front of Plaintiff. (Pl.'s Opp'n Br. 32.) Plaintiff asserts that management did so despite being aware that Plaintiff was immunocompromised. (*Id.*)

---

[11] Hostile work environment claims are substantially similar under the NJLAD and ADA. *Carroll v. Sunrise Detox Cherry Hill, LLC*, 2020 WL 4218409, at *7 (D.N.J. July 22, 2020) (listing the elements for hostile work environment claims under the NJLAD and ADA, concluding they are similar, then conducting an analysis under the NJLAD standard applicable to both a plaintiff's NJLAD and ADA claims); *see also Vanhook v. Cooper Health Sys.*, No. 21-2213, 2022 WL 990220, at *4 (3d Cir. 2022) (similarly analyzing hostile work environment claims under the ADA and NJLAD contemporaneously). Accordingly, this Court analyzes both Plaintiff's ADA and NJLAD claims under the NJLAD standard unless case law otherwise necessitates.

Moreover, Plaintiff contends she was subject to a hostile work environment where management assigned her to conduct Covid-19 screening despite Plaintiff requesting accommodations. (*Id.*) Plaintiff contends this "is the essence of physically threatening behavior." (*Id.*)

Defendants, on the other hand, argue that "Plaintiff was not a health care provider and did not provide treatment to any patients." (Defs.' Moving Br. 38.) Plaintiff reiterates that "nearly all [Riverview] personnel were asked to assist" with "C[ovid-19] screening questions and taking patient temperatures at the door." (*Id.*) This is significant, Defendants argue, because it shows that the alleged "hostile" conduct by Defendants was not directed at Plaintiff because of her disability, which is the first element Plaintiff will have to prove to succeed on her hostile work environment claim. (*Id.*)

The Court agrees with Defendants. The undisputed record establishes that most Riverview staff were asked to conduct Covid-19 screening procedures and take patient temperatures at the door. (DSUMF ¶ 23; PRDSUMF ¶ 23; PSMDF ¶ 29; DRPSMDF ¶ 29.) Plaintiff provides no evidence that she was targeted in any way as a result of her disability, and therefore, Plaintiff cannot show that the alleged abusive behavior would not have occurred if she were not disabled. To the contrary, the undisputed facts suggest Plaintiff would have been asked to assist in Covid-19 screening notwithstanding her immunocompromised status. (*See* DSUMF ¶ 23; PRDSUMF ¶ 23.) For these reasons, no genuine disputes of material fact remain as to the first prong of Plaintiff's hostile work environment claim as the undisputed record establishes that Plaintiff would have been asked to assist with Covid-19 responsibilities whether she was disabled or not. Accordingly, Defendants' motion for summary judgment on Plaintiff's hostile work environment claim is granted.

IV.     **CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment is granted as to all Counts in Plaintiff's Amended Complaint. An appropriate Order will accompany this Opinion.

Date: June 30, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE